# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     :

    v.                  :      CRIMINAL NO. 3:CR-18-037

JESSE CAREY,           :       (JUDGE MANNION)

        Defendant     :

## MEMORANDUM

Before the court are the following motions filed by the defendant, Jesse Carey ("Carey"): a motion to set aside default judgment, (Doc. 100, at 1-3), attached to which is a motion to sever, (Doc. 100, at 4-8); a motion for return of property, (Doc. 101); a motion for an extension of time to file pre-trial motions, (Doc. 102); a motion to dismiss the indictment, (Doc. 87)[1]; and three motions to suppress evidence, (Doc. 86; Doc. 108; Doc. 111).[2]

---

[1] Carey's most recent former counsel, Mr. Leo Latella, filed a motion to dismiss the indictment, (Doc. 87), and a motion to suppress, (Doc. 86), on September 27, 2019. However, upon Carey's specific request, (Doc. 98), the court deemed the motions withdrawn. (Doc. 99). Nevertheless, in light of Carey's *pro se* status, and because the government has briefed the issues contained in the motions, the court will address all arguments set forth in the motions and in Carey's briefs in support.

[2] On December 9, 2019, Carey filed a "Motion to Suppress Count 1 of the Superseding Indictment," (Doc. 122); however, based upon the contents of the document, it is apparent Carey is in fact replying to the government's

Carey filed eleven briefs some of which the court will construe as supplemental or reply briefs in support, (Doc. 103; Doc. 104; Doc.109; Doc. 109-1, at 1; Doc. 110; Doc. 113; Doc. 114; Doc. 115; Doc. 119; Doc. 122; Doc. 123), and the government has filed briefs in opposition to the motions, (Doc. 106; Doc. 121).

For the reasons set forth below, the motions to set aside default judgment and for return of property, (Doc. 100; Doc. 101), will be **DENIED**; the motion to sever, (Doc. 100, at 4-8), will be **DENIED**; the motion for an extension of time, (Doc. 102), will be **DENIED AS MOOT**; motion to dismiss the indictment, (Doc. 87), will be **DENIED**; and the three motions to suppress evidence, (Doc. 86; Doc. 108; Doc. 111), will be **DENIED.**

## I.    BACKGROUND

The following pertinent allegations, taken from the government's briefs in opposition, (Doc. 106; Doc. 121), will be considered only for purposes of the court's disposition of the motions under review.

---

brief in opposition to, *inter alia*, Carey's motions to suppress, (Doc. 106). Therefore, the court will construe the document as a reply brief to the government's brief in opposition.

In Count I, Carey is charged with possession with intent to distribute controlled substances, namely, cocaine and a mixture of heroin and fentanyl, on or about January 12, 2017, in violation of 21 U.S.C. §841(a)(1). Relevant to this Count, Carey is alleged to have been involved in an incident which started when members of the Plymouth Township Police Department ("Plymouth Police") utilized a confidential informant to make a controlled purchase of heroin from Carey, who was going by the name, "J.B." Plymouth Police then obtained a search warrant for Carey's residence in Plymouth Township and, while it was being executed, Carey arrived in a vehicle and parked in the driveway. The landlord of the property pointed to Carey and identified him to police as "J.B." When Carey saw the police officers, he put his car in reverse and nearly struck, but stopped before hitting, police officers behind his vehicle. Carey was observed to have been reaching behind his legs, where an aerosol can was discovered, the bottom of which was ajar, exposing a hidden compartment containing suspected cocaine. According to the affidavit of probable cause, Carey uttered, "I wasn't going to run you over. I'm a drug dealer. I'm just a drug dealer. I wouldn't run you over. I know many good cops." (Doc. 121, at 5). Carey was searched incident to arrest and police discovered $2,086, which included $80 in serialized currency from the

controlled buy, as well as marijuana. The search of the residence revealed a small quantity of drugs. Police additionally learned that Carey had an active warrant for his arrest.

Police also obtained a search warrant for Carey's vehicle and located a clear bag containing .18 grams of heroin, 8 baggies containing 2.0 grams of cocaine, the aerosol can containing 12.02 grams of cocaine, a digital scale, small zip bags, rubber bands, a cutting agent, a blue ink pad, and a Mohegan Sun Casino card in the name of Jesse Carey. A search of the vehicle's trunk revealed more drug paraphernalia, including a strainer, disposable gloves, small zip bags, three cell phones, and two black ink stampers.

In Count II, Carey is charged with possession with intent to distribute controlled substances, namely, cocaine and heroin, on or about August 5, 2017, in violation of 21 U.S.C. §841(a)(1). Pertinent to this Count, Carey is alleged to have entered the Mount Airy Casino in Monroe County on August 5, 2017, where security personnel asked Carey to provide identification. When Carey provided what appeared to be a counterfeit Connecticut driver's license, security officers asked him to step into a nearby security office and contacted the Pennsylvania State Police ("PSP"). Before PSP arrived, Carey

pushed one of the security officers, fled from the office, pushed a Pennsylvania Gaming Control Board agent, and ran toward the lower bus lobby. While running, Carey discarded a black sock on the ground, which was located by casino personnel and discovered to contain three baggies with 46.97 grams of cocaine and twenty-nine packets of heroin weighing .68 grams. Carey then tripped on the carpet, fell, and struggled with the casino security officers. Eventually, Carey was taken into custody by PSP troopers. When questioned about his identity, Carey claimed to be the person on the Connecticut driver's license, refusing to provide his real identity or to be interviewed. A search of Carey's person revealed a digital scale, $9,777 in currency, a fraudulent United States passport, and two cell phones.

Carey was indicted on February 6, 2018, with one count related to the Mount Airy Casino incident (Doc. 1), but on May 14, 2019, the superseding indictment was filed, (Doc. 61). On May 17, 2019, Carey was arraigned and pleaded not guilty to both Counts. (Doc. 67). After having been appointed two prior attorneys, on August 28, 2019, the defendant again motioned for new counsel which was granted and the court appointed Mr. Latella of the Federal Public Defender's Office to represent Carey. (Doc. 80).

On September 27, 2019, Mr. Latella filed a motion to suppress physical evidence and statements, (Doc. 86), and a motion to dismiss the superseding indictment based on alleged pre-indictment delay, (Doc. 87). However, Mr. Latella did not file briefs in support of either motion, as Carey instructed him to withdraw the motions.

Now unhappy with his third appointed counsel, on November 4, 2019, after conducting a full *pro se* representation colloquy, the court granted Carey's request to proceed *pro se.* (Doc. 94; Doc. 96). The court also directed that Mr. Latella would remain as "stand-by counsel" for Carey. Further, the court allowed Carey to withdraw the present pending motions filed on his behalf, (Doc. 86; Doc. 87), or to supplement the motions as he saw fit, and directed that his filings must be submitted by Friday, November 8, 2019.

On November 15, 2019, Carey filed the instant motions to set aside default judgment, (Doc. 100), for return of property, (Doc. 101), and for an extension of time to file pre-trial motions, (Doc. 102). By order dated November 20, 2019, the court granted the motion and set November 29, 2019, as the final day for Carey to submit any additional pre-trial motions.

(Doc. 105). Accordingly, Carey's motion for an extension of time, (Doc. 102), will be **DENIED AS MOOT**.

On November 25, 2019, Carey filed a letter requesting "somebody [to] schedule me a change of plea hearing and can you do it quick cause I wanna hurry up and take this 151 months cause I'm a career offender right so I can appeal it please hurry." (Doc. 107).

On November 26, 2019, Carey filed a motion to suppress evidence, (Doc. 108), briefs in support, (Doc. 109; Doc. 109-1, at 1), and a supplemental brief in support of his motion for return of property, (Doc. 109-1, at 2-6). On December 2, 2019, Carey filed six additional documents, including (1) what appears to be additional case law pertinent to his motion for return of property, (Doc. 110); (2) a memorandum of law/motion to suppress physical evidence, identification, and statements, which included case law on prosecutorial misconduct, (Doc. 111); (3) an additional brief in support of his motion for return of property, which the court will construe as a reply brief, (Doc. 112); (4) a document with case law on forfeiture, which the court will construe as another supplemental brief in further support of his motions to suppress, (Doc. 113); (5) a document titled, "Supplemental Brief," which the court will construe as yet another supplemental brief in support of

his motion for return of property, (Doc. 114); and (6) a brief in support of his motion for return of property, which the court will again construe as a supplemental brief in support of his motion for return of property, (Doc. 115).

On December 4, 2019, Carey filed a motion for a renewed detention hearing, (Doc. 118), which the court denied by order dated December 5, 2019, (Doc. 120). Also on December 4, 2019, Carey filed another brief in support of his motion to set aside default judgment and for return of property, (Doc. 119). The government filed another brief in opposition to Carey's motions. (Doc. 121). Carey then filed two reply briefs to the government's brief in opposition. (Doc. 122; Doc. 123).

## II.    DISCUSSION
### a.  MOTION TO SEVER

It appears that Carey's motion to sever the Counts of the superseding indictment, (Doc. 100, at 4), was originally authored by his former counsel, Mr. Latella, but was amended with Carey's handwritten annotations and corrections. Although Carey has not filed a brief in support of this motion, the government has addressed the motion in its brief in opposition, (Doc. 106), and the court will consider its merits.

In this motion, Carey argues that the purported factual bases of the Counts are unrelated, separate in time, and occurred in different jurisdictions, and that each Count involves different witnesses. In response, the government, noting that Rule 8(a) permits joinder of multiple offenses "of the same or similar character," emphasizes that both Counts involve possession with intent to distribute cocaine and heroin and that the incidents occurred less than seven months apart.

The purposes of Rule 8 and 14 are "to promote economy and efficiency and to avoid a multiplicity of trials, [so long as] these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial." *Bruton v. United States*, 391 U.S. 123, 131 n.6 (1968) (internal quotation marks omitted). Federal Rule of Criminal Procedure 8(a) provides, in pertinent part,

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged-whether felonies or misdemeanors or both-are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

The Third Circuit in *United States v. Heilman*, explained when offenses may be joined stating,

> [C]ounts are similar if they are "somewhat alike" or share "a general likeness," or otherwise have a sufficient logical connection and can be tried using the same evidence. *See United States v. Rivera*, 546 F.3d 245, 253 (2d Cir. 2008); *United States v. Graham*, 275 F.3d 490, 512 (6th Cir. 2001) ("[W]hen the joined counts are logically related, and there is a large area of overlapping proof, joinder is appropriate."). Moreover, offenses may be joined if they occurred within a relatively short period of time of each other and the evidence of each overlaps. *See United States v. Donaldson*, 978 F.2d 381, 391 (7th Cir. 1992).

377 Fed.Appx. 157, 202 (3d Cir. 2010).

When determining the propriety of joinder of offenses, the court can consider the face of the indictment, *United States v. Irizarry*, 341 F.3d 273, 287 (3d Cir. 2003), as well as pretrial documents that show the factual connections between the counts and "any offers of proof submitted by the government," *United States v. Avila*, 610 F.Supp.2d 391, 395 (M.D.Pa. 2009).

Even where there is no misjoinder under Rule 8, a court may order separate trials of counts under Rule 14(a) if the joinder of offenses in an indictment would prejudice the defendant. Fed.R.Crim.P. 14. The burden of

showing prejudice is on the defendant, *United States v. Eufrasio*, 935 F.2d 553, 568 (3d Cir. 1991), and "Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts," *Zafiro v. United States*, 506 U.S. 534, 541 (1993). However, "[e]ven when the risk of prejudice is high, less drastic measures than severance (such as limiting instructions) 'often will suffice to cure any risk of prejudice.'" *Id.* (quoting *Zafiro*, 506 U.S. at 539).

Here, the court finds that the two Counts against Carey were not improperly joined under Rule 8(a), and that severance is not appropriate under Rule 14, given the interest of judicial economy and the lack of prejudice to Carey. As the government notes, both Counts allege violations of the same statute, 21 U.S.C. §841(a)(1), they involve similar modes of operation and nearly identical substances,[3] and the timeframe between the two offenses is minimal. *See United States v. Melendez*, 301 F.3d 27, 35 (1st Cir. 2002) (finding no error under Rules 8(a) or 14 in the joinder of two counts of possession with intent to distribute where the two incidents

---

[3] As noted above, while Count II of the superseding indictment alleges possession with intent to distribute cocaine and heroin, Count I alleges possession with intent to distribute cocaine and a mixture of heroin and fentanyl. (Doc. 61).

occurred two years apart). Therefore, there is no improper joinder under Rule 8(a). With regard to Rule 14, Carey's mere allegations of prejudicial joinder are insufficient to warrant severance. *See United States v. McNeil*, No. 06-373, 2007 WL 2234516, at *3 (W.D.Pa. Aug. 2, 2007) ("[A] defendant seeking relief under Rule 14(a) has the burden to demonstrate . . . 'real not fanciful' prejudice.'").  Moreover, even if Carey could identify with any specificity the prejudice that would result from trying the two Counts simultaneously, the court finds that a limiting instruction would be sufficient to eliminate the prejudice. *See Zafiro*, 506 U.S. at 538-39 ("Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion."). Accordingly, the court will **DENY** Carey's motion to sever, (Doc. 100, at 4-8).

### b. MOTION FOR RETURN OF PROPERTY AND TO SET ASIDE DEFAULT JUDGMENT

As both of these motions pertain to Carey's objection to the seizure of $9,777 in U.S. currency from his person during the August 5, 2017 Count II incident, as well as the other property, the court will address them together. In the plethora of documents Carey has filed related to these motions, (Doc. 100; Doc. 101; Doc. 104, at 1-4; Doc. 109-1, at 2; Doc 110; Doc 112; Doc.

114; Doc. 115; Doc. 119; Doc. 123), Carey asserts all manner of arguments, including that (1) the default judgment should be set aside because it was entered due to the gross negligence of his former counsel by virtue of his refusal to act as Carey's attorney in the state forfeiture proceeding; (2) the seizure constitutes double jeopardy because it is a civil sanction that is punitive; (3) there is no evidence that Carey was actually served with the forfeiture motion; (4) the seizure was an exercise of eminent domain in that his property was taken for a public purpose without just compensation in violation of the Fourth and Fifth Amendments; (5) the seizure prejudiced his ability to defend himself in this case because he is unable to use the money to pay for an attorney of his choice; (6) the Assistant United States Attorney ("AUSA"), working in tandem with a Joseph May, is attempting to circumvent his privilege against self-incrimination by invoking a civil remedy to enforce a criminal statue; (7) "they" took his money and did not seek a warrant for over a year, (Doc. 114, at 4); (8) the superseding indictment does not reference the $9,777 and, thus, probable cause to seize it was never decided by a judicial officer; (9) the car, cell phone, and $9,777 have been illegally held for over two years without a warrant, probable cause, a judicial determination, exigency, consent, or legal justification besides a mere

- 13 -

suspicion; and (10) the government violated 18 U.S.C. §983(a) since a hearing was not held within sixty days of the seizure.[4] With the exception of the arguments addressed below, none of these contentions have sufficient merit to warrant further discussion.

With regard to Carey's primary argument about the seizure of his money, the government represents in its brief that it is not in possession of the $9,777 seized on August 5, 2017, and indicates that, upon further investigation, it discovered and attached to its brief in opposition a motion for order of forfeiture and condemnation seeking rights to the $9,777. Crucially, here, the motion was filed by the Pennsylvania Office of Attorney General ("POAG") in the Monroe County Court of Common Pleas, and it was personally served on Carey on May 7, 2018. (Doc.106, at 32, 37). The documents indicate that, when Carey did not respond to the motion, POAG filed a notice of intent to enter default judgment/forfeiture order on June 8, 2018, which was also served on Carey. (Doc. 106, at 38-40). On June 29,

_____

[4] In pertinent part, 18 U.S.C. §983(a)(1)(A)(i) states, "[A]ny nonjudicial civil forfeiture proceeding under a civil forfeiture statute, with respect to which the Government is required to send written notice to interested parties, such notice shall be sent in a manner to achieve proper notice as soon as practicable, and in no case more than 60 days after the date of the seizure."

2018, the Monroe County Court entered an order condemning and forfeiting the $9,777 to the POAG, pursuant to the Pennsylvania Controlled Substance, Drug, Device and Cosmetic Act, 42, Pa.C.S. §§5801-5808.[5] ([Doc. 106, at 41](Doc. 106, at 41)).

As the government observes, given that Carey's complaints about the taking and holding of the $9,777, as well as his other property, pertain to the Commonwealth's—and not the federal government's—actions, his arguments should be directed there and not to this court, as this court is not an appellate court for state court forfeiture proceedings. Accordingly, all of Carey's accusations accusing the federal government and the AUSA of illegally seizing and holding his property are meritless.

To the extent that Carey argues this court possesses jurisdiction where he is asserting that the Commonwealth's actions have violated his federal constitutional rights, including his ability to defend himself in the present criminal proceedings, he is partially correct, in that nothing a state can do "will be allowed to destroy [a] federal right which is to be vindicated." *Board*

---

[5] Notably, Section 5806(6)(i)(A) of the Forfeiture Act states that "[m]oney, negotiable instruments, securities or other things of value furnished . . . in exchange for a controlled substance" are subject to forfeiture to the Commonwealth. 42 Pa.C.S. §5802(6)(i)(A).

*of Comm'rs of Jackson Cty.*, 308 U.S. 343, 350 (1939). However, the substance of Carey's arguments lack merit, as his constitutional rights were not violated.

As to his allegations that his Fourth Amendment rights were violated, he is incorrect. All of the items, with the exception of the car, were seized from his person during searches incident to arrest, and it is well-established that a search incident to lawful arrest constitutes an exception to the warrant requirement.

 "Under this well-recognized exception to the warrant requirement of the Fourth Amendment, when an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape." *United States v. Shakir*, 616 F.3d 315, 317 (3d Cir. 2010) (internal quotation marks and brackets omitted). The permissible scope of such a search "includes the arrestee's person and the area within his immediate control—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Id.* at 763 (internal quotation marks omitted). Accordingly, nothing the state authorities did here violated Carey's Fourth Amendment rights.

With regard to his argument that his Sixth Amendment rights were violated because the seizure of the $9,777 prevents him from hiring his counsel of choice, Carey misunderstands the law. The effect of what Carey seeks—for this court to direct the Commonwealth to return his property—would function to overturn the state court's decision, which this court simply cannot do, particularly where Carey is raising his constitutional issue for the first time before this court. *See Cardinale v. Louisiana*, 394 U.S. 437, 438 (1969) ("It was very early established that [federal courts] will not decide federal constitutional issues raised [] for the first time on review of state court decisions.").

Accordingly, Carey's motion for return of property, (Doc. 101), and motion to set aside default judgment, (Doc. 100), are **DISMISSED**.[6]

_____

[6] In one of his supplemental briefs, Carey provides case law, but no argument, regarding the failure to serve a complaint in the context of a default judgment. (Doc. 109-1, at 3). In another, he alleges, "I never received any forfeiture [sic] besides the 1 from October 23rd 2017. . . . I never saw or knew of this until the [PSP] trooper brought it to the jail in an attempt to mislead me or swindle me." (Doc. 123, at 1). To the extent that Carey is arguing that he was not properly served with the motion for order of forfeiture and condemnation, the affidavit of service and personal service form attached to the government's brief in opposition, which indicate that Carey was personally served with the motion on May 7, 2018, belie that argument. (Doc. 106, at 37). In any case, as stated above, Carey's motions, to the

### c. MOTIONS TO SUPPRESS

While Carey is not specific with regard to the evidence he seeks to suppress, his motions to suppress, (Doc. 86; Doc. 108; Doc. 111), including the one authored by Mr. Latella, (Doc. 86), reference the contraband seized from his car, including the aerosol can and controlled substances, the black sock and its contents, his cell phone seized during the Count II incident,[7] including photographs and "multimedia" purportedly obtained from it, as well as the $9,777.[8] Additionally, while the majority of Carey's third motion to suppress, (Doc. 111), is dedicated to setting forth case law on "Prosecutorial Vindictiveness," Carey also argues that his Fifth Amendment rights were violated when "state agents extracted information or evidence" from his cell phone and showed it to the grand jury. *Id.*

---

extent they seek reversal of the state court order of forfeiture, are not properly before this court.

[7] Carey does not specify which of the two cell phones seized in the Count II incident the contents of which he is seeking to suppress.

[8] Throughout these motions, Carey repeats many of his arguments regarding the seizure of the $9,777. Since the court addressed these arguments in its disposition of the motions for return of property and to set aside default judgment, it will not address them again here.

Protection against unreasonable searches and seizures is enshrined in the Fourth Amendment, which states,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

The exclusionary rule calls for the suppression of evidence obtained during an unconstitutional search or illegal seizure. In *United States v. Leon*, 468 U.S. 897, 916, 920 (1984), the Supreme Court recognized that the goals of deterrence would not be furthered "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate [judge] and acted within its scope." Hence, the "good faith exception" to the exclusionary rule arose from *Leon.* The Supreme Court later clarified that the exclusionary rule can only be triggered where "police conduct" is "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring v. United States*, 555 U.S. 135, 136 (2009).

Here, to the extent that Carey seeks to suppress the contents of the black sock he discarded, the court will deny his motion. A warrantless search of voluntarily abandoned property is permissible, since the owner no longer has a reasonable expectation of privacy in it. *See United States v. Harrison, 689 F.3d 301, 306-07 (3d Cir. 2012)*. Moreover, as the government observes, because the sock was seized by casino personnel and only subsequently turned over to the PSP, the Fourth Amendment is inapplicable, since the "basic purpose" of the Fourth Amendment "is to safeguard the privacy and security of individuals against arbitrary invasions *by governmental officials*." *See Carpenter v. United States, 138 S.Ct. 2206, 2213 (2018)* (emphasis added) (internal quotation marks omitted); *see also United States v. Jacobsen, 466 U.S. 109, 113 (1984)* (stating the Fourth Amendment "is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official." (internal quotation marks omitted)).

The court will also deny Carey's motions with regard to the evidence seized during the Count I incident. The items seized from Carey's person were obtained as a result of a search incident to arrest, and the items

obtained from Carey's car were obtained as a result of a search warrant,[9] as were the items seized from his house. Accordingly, there was no Fourth Amendment violation.[10]

Finally, to the extent Carey is arguing for either suppression of evidence or dismissal of the indictment because of prosecutorial vindictiveness, the court will deny his motion. Carey has identified no facts which would support a finding of vindictiveness. Indeed, Carey does not even argue that the government has taken any action against him in retaliation for

---

[9] Although it is unclear whether the aerosol can was searched prior to or after police obtained a search warrant, in either circumstance there was no violation of Carey's Fourth Amendment rights, the automobile exception permits vehicle searches without a warrant if there is probable cause to believe that the vehicle contains evidence of a crime." *United States v. Donahue*, 764 F.3d 293, 299-300 (3d Cir. 2014). Given that one of the officers indicated he detected the odor of marijuana and saw Carey reaching toward the aerosol can upon encountering Carey in the vehicle, there was probable cause to search the vehicle and the can itself, which was ajar, exposing suspected cocaine.

[10] One of Carey's briefs, (Doc. 109), raises the "Silver Platter Doctrine," which holds that "evidence obtained by state officers during a search which, if conducted by federal officers, would have violated the defendant's immunity from unreasonable searches and seizures under the Fourth Amendment is inadmissible over the defendant's timely objection in a federal criminal trial." *Elkins v. United States*, 364 U.S. 206, 223 (1960). However, given that state authorities did not illegally gather the evidence in this case, the doctrine is inapplicable here.

the exercise of his constitutional rights.[11]  Instead, his sole argument appears to be that there was prosecutorial vindictiveness because a superseding indictment was handed down two days before his trial was to begin. Carey ignores, however, that on the motion of his second counsel, who was appointed at Carey's request, the court rescheduled the trial[12] and thus the superseding indictment was filed nearly a month prior to his trial date.

Moreover, even if Carey were correct about the timing of filing of the superseding indictment, his argument still falls woefully short of establishing vindictiveness. There are two ways to prove a claim of prosecutorial vindictiveness: "[A] defendant may use evidence of a prosecutor's retaliatory motive to prove actual vindictiveness . . . [or] a defendant may show facts sufficient to give rise to a presumption of vindictiveness." *United States v. Paramo*, 998 F.2d 1212, 1220 (3d Cir. 1993).

---

[11] Indeed, it is unclear what constitutional right Carey believes he is being retaliated against for exercising, given that it is still not apparent whether he seeks to go to trial or plead guilty. *Compare* Doc. 32 (indicating Carey's desire to plead guilty), *with* Doc. 37 (indicating Carey did not wish to "plead in this case"), *and* Doc. 98 (requesting the court "set a date for plea and sentence").

[12] By order dated April 29, 2019, the court continued jury selection and trial from May 20, 2019, to June 17, 2019. (Doc. 60).  On May 14, 2019, the superseding indictment was filed. (Doc. 61).

Carey has done neither. He has presented no evidence of retaliatory motive and Carey has presented no evidence, direct or circumstantial, to raise a presumption of vindictiveness, particularly since a prosecutor's decision to add additional charges in a superseding indictment, in and of itself, does not raise a presumption of vindictiveness. *See United States v. Goodwin*, 457 U.S. 368, 380-82 (1982). Accordingly, Carey's motions to suppress, (Doc. 86; Doc. 108; Doc 111), will be **DENIED**.

### d. MOTION TO DISMISS THE INDICTMENT

While the motion to dismiss the indictment authored by Mr. Latella argued that Carey was prejudiced by preindictment delay, (Doc. 87), Carey's brief in support, (Doc. 103), argues that the superseding indictment was impermissibly broadened. More specifically, Carey argues that the superseding indictment was impermissibly broadened to include the incident in Luzerne County that occurred on January 12, 2017, since the original indictment only alleged possession with intent to distribute on August 5, 2017. In support Carey cites *United States v. Grady*, wherein the court stated, "Since the statute stops running with the bringing of the first indictment, a superseding indictment brought at any time while the first indictment is still validly pending, if and only if it does not broaden the

charges made in the first indictment, cannot be barred by the statute of limitations." 544 F.2d 598, 601-02 (2d Cir. 1976) (footnote omitted).

In response, the government notes that the superseding indictment was filed on May 14, 2019, within five years of both the January 12, 2017 Count I incident and the August 5, 2017 Count II incident, as required by 18 U.S.C. §3282.

To the extent that Carey complains of pre-indictment delay, the government notes that the delay is in no small part due to the defense's actions, including of Carey's multiple requests for a change of counsel, numerous defense motions for extensions of time, ongoing plea negotiations and Carey's vacillation between requesting a plea hearing and invoking his right to a trail, and the defense's request for a pre-plea presentence report. Further, the government asserts that Carey cannot meet his burden of proving dismissal is appropriate because of pre-indictment delay.

In *United States v. Ismaili*, the Third Circuit held,

> [I]n order to obtain a dismissal of charges on the grounds of pre-indictment delay pursuant to the Due Process Clause, a defendant must bear the burden of proving two essential facts: (1) that the government intentionally delayed bringing the indictment in order to gain some advantage over him, and that (2) this intentional delay caused the defendant actual prejudice.

828 F.2d 153, 167 (3d Cir. 1987).

Here, the government is correct that the superseding indictment was filed within five years of the alleged crimes and, therefore, there is no violation of 18 U.S.C. §3282. As to delay, Carey has not shown, nor has he attempted to show, that the government intentionally delay bringing either the indictment or superseding indictment, or that any delay has caused him actual prejudice. Accordingly, his motion to dismiss the indictment. (Doc. 87).

## III.    CONCLUSION

Accordingly, for the reasons set forth above, the motions to set aside default judgment and for return of property, (Doc. 100; Doc. 101), will be **DENIED**; the motion to sever, (Doc. 100, at 4-8), will be **DENIED**; the motion for an extension of time, (Doc. 102), will be **DENIED AS MOOT**; motion to dismiss the indictment, (Doc. 87), will be **DENIED**; and three motions to suppress evidence, (Doc. 86; Doc. 108; Doc. 111), will be **DENIED**, except as set forth in the appropriate order that will issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: December 13, 2019**
18-037-02