# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA** :

   **v.** :    **CRIMINAL NO. 3:CR-18-037**

**JESSE CAREY,** :    **(JUDGE MANNION)**

   **Defendant** :

## MEMORANDUM

Pending before the court are the government's objections, (Doc. 167), to the final Presentence Investigation Report ("PSR"), (Doc. 176), prepared by the United States Probation Office as to the defendant Jesse Carey ("Carey"). The objections have been fully briefed in the parties' sentencing memoranda and are ripe for this court's review. For the reasons that follow, the government's objections to the final PSR will be **SUSTAINED**.

## I.   BACKGROUND

Since the court set forth the facts and procedural history of this case in its prior memoranda, it need not repeat it herein. Pertinent here, on February 6, 2018, Carey was indicted on one count of possession with intent to distribute a controlled substance, namely, cocaine. He was arraigned and entered a plea of not guilty. Through his first appointed counsel, Carey filed an unopposed motion requesting the court order a pre-plea presentence

investigation and request for immediate sentencing after disclosure of the presentence report. (Doc. 32). The motion was granted on June 15, 2018. (Doc. 34).

After the court appointed Carey new counsel at his request, the final presentence report was issued on April 2, 2019. (Doc. 56). On May 14, 2019, however, Carey was charged in a Superseding Indictment with two counts of possession with intent to distribute controlled substances—namely, cocaine and a mixture of heroin and fentanyl in Count 1, and cocaine and heroin in Count 2. (Doc. 61). Carey again pleaded not guilty. At Carey's request, the court reappointed his first attorney.

Eventually, Carey chose to proceed *pro se*, and with the assistance of standby counsel, he separately entered a guilty plea to Count I of the Superseding Indictment and a conditional guilty plea pursuant to Federal Rule of Criminal Procedure 11(a)(2), reserving his right to appeal the denial of his motions to suppress. (Doc. 131; Doc. 144). Shortly thereafter, Carey filed a motion to withdraw his guilty plea, (Doc. 147), and, subsequently, a motion to withdraw the motion to withdraw his guilty plea, (Doc. 164). The court denied those motions by separate memorandum and order. Additionally, at Carey's

insistence, the court granted his standby counsel's motion to withdraw. (Doc. 162).

On February 25, 2020, the Probation Office issued a revised draft PSR. (Doc. 166). On March 6, 2020, the government filed its objections in a sentencing memorandum. (Doc. 167). Out of an abundance of caution, the court *sua sponte* convened a presentence hearing on March 6, 2020, to discuss what the court anticipated would be a sentencing issue with respect to Carey's career offender status. (Doc. 168). Given the complicated nature of the issue, the court asked Carey if he would accept representation by CJA Attorney Carl Poveromo for the purposes of briefing the issue. Carey declined the court's invitation. Nevertheless, for purposes of aiding the court in analyzing the issue, the court appointed Attorney Poveromo as standby counsel and asked that he prepare a defense brief on the issue. (Doc. 173).[1]

The final presentence report was filed on April 1, 2020. (Doc. 176). In contrast to the first PSR which found that Carey was a career offender pursuant to §4B1.1 of the United States Sentencing Guidelines ("Guidelines"), the revised PSR concludes that Carey is not a career offender.

---

[1] As with the prior appointment of standby counsel, the court made clear that Carey could confer, or not confer, with Attorney Poveromo as he saw fit.

Accordingly, the PSR finds that Carey's offense level is 12 and his criminal history category is VI, resulting in an advisory guideline range of 30 to 37 months imprisonment. (Doc. 176, ¶70).[2] By contrast, the government contends that, with the career offender enhancement, Carey's offense level would be 30,[3] his criminal history category would remain VI, and his guideline range would be 168 to 210 months imprisonment.

On April 1, 2020, Carey, through his standby counsel, filed a sentencing memorandum in support of the second PSR. (Doc. 179). On April 14, 2020, the government filed a response to Carey's sentencing memorandum. (Doc. 180). The matter is now ripe for this court's review.

---

[2] The prior PSR determined that Carey's guideline range was 151 to 188 months imprisonment, based upon an offense level of 29 (with a three-level reduction for acceptance of responsibility), and a criminal history category of VI. (Doc. 56).

[3] This offense level reflects a two-level reduction for acceptance of responsibility. It is the government's position that a further deduction for acceptance of responsibility is not warranted since Carey did not plead guilty to Count 2 until the morning of trial, just prior to jury selection. The United States Probation Office agrees that, should the court find that Carey is a career offender, the total offense level would be 30, his criminal offense level would remain VI, and the guideline range would be 168 to 210 months imprisonment. (Doc. 177).

## II.    DISCUSSION

Under the Guidelines,

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. §4B1.1(a).

The parties do not disagree that the first two criteria apply. As to the third, the parties agree that Carey's 2007 conviction in New Jersey for manufacturing and distributing cocaine is a qualifying prior offense. However, the parties disagree as to whether Carey's 2015 conviction in Luzerne County for third-degree robbery is a qualifying prior offense. Accordingly, the issue presently before the court is whether a conviction for third-degree robbery under Pennsylvania Statute, 18 Pa.C.S. §3701(a)(1)(v), constitutes a crime of violence under §4B1.2(a) of the Guidelines. If so, the Guidelines call for Carey to be sentenced as a career offender pursuant to §4B1.1.

The enhancement for career offenders requires that the defendant have two or more prior felony convictions that are either a crime of violence or a controlled substances offense. U.S.S.G. §4B1.1(a). A "crime of violence" is

any state or federal offense punishable by more than one year in prison that either:

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, *robbery*, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. §5845(a) or explosive material as defined in 18 U.S.C. §841(c).

U.S.S.G. §4B1.2(a) (emphasis added).

To determine whether a prior state court conviction constitutes a federally defined crime of violence, the court must apply the categorical approach which involves comparing the elements of the state offense with elements of the "generic" crime. *United States v. Graves*, 877 F.3d 494, 501 (3d Cir. 2017). A conviction will qualify as a crime of violence only if the elements of the state offense are "the same as, or narrower than, those of the generic offense." *Id.* (internal quotation marks omitted). If, however, the state offense allows for conviction on a broader basis than the generic offense, it will not qualify as a crime of violence. *Id.*

Here, because Pennsylvania's robbery statute at issue is divisible, *United States v. Peppers*, 899 F.3d 211, 232 (3d Cir. 2018), the court will

- 6 -

apply the modified categorical approach, which permits the court "to examine a limited class of documents to determine which of a statute's alternative *elements* formed the basis of the defendant's prior conviction." *Descamps v. United States*, 570 U.S. 254, 262 (2013). These documents, referred to as "*Shepard* documents," include the charging document, guilty plea allocution, jury instructions, and judgment of conviction. *United States v. McCants*, 952 F.3d 416, 427 (3d Cir. 2020).

Here, a review of the Luzerne County docket records shows that Carey pleaded guilty to third-degree robbery under (a)(1)(v) of the Pennsylvania robbery statute.[4] (Doc. 167, at 16, 20-21). Therefore, the court must consider whether Carey's conviction is a qualifying prior offense under either the "elements" or "enumerated offense" clause of §4B1.2(a) of the Guidelines. *See McCants*, 952 F.3d at 428 (analyzing New Jersey's robbery statute under both the elements and enumerated clauses). The prior conviction is a crime of violence only if the state crime's elements "are the same as, or narrower than, those of the generic offense." *United States v. Brown*, 765 F.3d 185, 189 (3d Cir. 2014).

---

[4] Notably, the parties do not disagree that Carey was convicted under subsection 3701(a)(1)(v).

Under the elements clause of §4B1.2(a)(1) of the Guidelines, a conviction qualifies if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. §4B1.2(a)(1). The Third Circuit has held that the "use of physical force . . . involves the intentional employment of something capable of causing physical pain or injury to another person, regardless of whether the perpetrator struck the victim's body." Chapman, 866 F.3d at 133 (internal quotation marks omitted).

Subsection (a)(1)(v) of the Pennsylvania robbery statute states that "[a] person is guilty of robbery if, in the course of committing a theft, he . . . physically takes or removes property from the person of another by force however slight." 18 Pa.C.S §3701(a)(1)(v).

In *McCants*, the Third Circuit cited the parties agreed upon definition of generic robbery as "the taking of property from another person or from the immediate presence of another person by force or by intimidation," and reaffirmed its earlier holding that robbery "'requires no more than *de minimis* force.'" *McCants*, 952 F.3d at 428-29 (quoting *Graves*, 877 F.3d at 503). Thus, the question here is whether the Pennsylvania statute's requirement

that the perpetrator employ force "however slight" is broader than the federal generic requirement of "no more than *de minimis* force."

As noted, the government disagrees with the PSR's finding that the conviction at issue does not qualify as a crime of violence. The government acknowledges that in *Peppers*, the Third Circuit held that section (a)(1)(v) of Pennsylvania's robbery statute did not qualify as a crime of violence under the Armed Career Criminal Act ("ACCA") and, further, that the Supreme Court previously held that the phrase "physical force" under the ACCA's identical elements clause requires "violent force"—to wit, "force capable of causing physical pain or injury to another person." (Doc. 167, at 12) (quoting *Peppers, 899 F.3d at 233-34*). However, the government notes that the analysis under the ACCA differs from the analysis under the Guidelines, since the Guidelines list robbery as an enumerated offense and, therefore, the court need not consider whether the offense qualifies under the ACCA's elements clause. Moreover, the government argues the recent Supreme Court case *Stokeling v. United States, 139 S.Ct. 544 (2019)*, in which the Court clarified its prior holding regarding "physical force," casts doubt on the present validity of *Peppers.* Accordingly, the government contends that third-degree robbery is

definitively a crime of violence under the enumerated clause of §4B1.2(a)(2) and likely qualifies under the elements clause of §4B1.2(a)(1) as well.

In contrast, Carey argues that robbery "by force however slight" does not have as an element the use, attempted use, or threatened use of physical force against another. Carey argues that *Peppers*'s treatment of the statute under the ACCA applies equally here and remains good law. Carey specifically cites the following holding in *Peppers*:

> [T]he Pennsylvania robbery statute criminalizes "physically tak[ing] or remov[ing] property from the person of another *by force however slight*[.]" 18 Pa. [C.S.] §3701(a)(1)(v) (emphasis added). Because that has been interpreted to include "any amount of force applied to a person while committing a theft[,]" including the mere "use of threatening words or gestures, and operates on the mind," and because "[t]he degree of actual force is immaterial, so long as it is sufficient to separate the victim from his property," Pennsylvania's robbery statute suffers from the same issues the Supreme Court identified with Florida's battery statute in *Johnson 2010*. Both laws proscribe the merest touching, which is insufficient conduct to meet the "physical force" requirement under the ACCA's elements clause.

*Peppers*, 899 F.3d at 211 (3d Cir. 2018) (some internal citations omitted).

Carey argues that the Supreme Court's recent holding in *Stokeling*, instead of casting doubt on *Peppers*, confirms its holding. In *Stokeling*, the Supreme Court held that Florida's robbery statute which involved takings from

a person with "the use of force, violence, assault, or putting in fear," qualified as an ACCA predicate offense. *Id.* at 549 (quoting Fla.Stat. §812.12(1)). In particular, Carey cites *Stokeling*'s reiteration of the Court's prior holding that "force" within the meaning of the ACCA "suggest[s] a degree of power that would not be satisfied by the merest touching." 139 S.Ct. at 548 (quoting *Johnson v. United States*, 559 U.S. 133, 139 (2010)). Carey argues that, in so holding, the Court clarified that statutes which require force sufficient to overcome the victim's resistance qualify but statutes requiring only the mere snatching of property, like Pennsylvania's third-degree robbery, do not.

Carey cites *Commonwealth v. Brown*, as the "lead case" defining Pennsylvania robbery, wherein the Pennsylvania Supreme Court upheld a defendant's third-degree robbery conviction for grabbing a purse hanging off the victim's arm and running away with it, noting, "It is clear to us that *any amount of force* applied to a person while committing theft brings the act within the scope of robbery under [section 3701(a)(1)(v)]." 484 A.2d 738, 741 (Pa.1984) (emphasis added). Given this holding, Carey argues that Pennsylvania's third-degree robbery statute broadly penalizes conduct that does not constitute generic robbery because generic robbery, unlike section

(a)(1)(v), requires more force than merely snatching property without resistance by a victim.

Carey cites other cases in which Pennsylvania courts upheld third-degree robbery convictions for purse snatching or the sudden taking of property, arguing that, because such a crime does not require even *de minimis* force, it sweeps more broadly than generic robbery and cannot be a qualifying prior offense. *See Commonwealth v. McNair*, 546 A.2d 688 (Pa. 1988) (upholding a defendant's robbery conviction where he followed the victim into a parking garage, ran toward her, and physically removed her purse from her person); *Commonwealth v Bedell*, 954 A.2d 1209 (Pa.Super. 2008) (upholding a defendant's robbery conviction where he snatched a wallet from the victim's hand using no force other than that necessary to snatch the wallet and fled). *Commonwealth v. Bloodsaw*, No. 3101 EDA 2017, 2017 WL 3587143 (Pa.Super. Aug. 21, 2017) (upholding a robbery conviction where the defendant rode up to a victim on his bicycle and grabbed a bag out of the victim's hand). Thus, Carey argues that, by virtue of the fact that a mere snatching of property from a victim's hand can constitute third-degree robbery, it is the precise type of crime that *Stokeling* held was not an

ACCA predicate crime and, therefore, it is not a qualifying crime of violence under the elements clause.

In its response, the government disagrees with Carey's interpretation of *Stokeling*, arguing that it established a low threshold of force and relied largely on the common law definition of robbery which did not distinguish between gradations of violence. Specifically, in defining "force," *Stokeling* relied on the common law holding that "violence" was traditionally interchangeable with "force" and that any act which "physically overcame a victim's resistance, 'however slight' that resistance might be, [] necessarily constituted violence." *Stokeling*, 139 S.Ct. at 550. Therefore, because *Stokeling* indicates that force however slight still qualifies as force, the government contends that third-degree robbery qualifies as a crime of violence under the elements clause.

The government further argues that the Pennsylvania cases cited by Carey, upon closer inspection, do not establish that Pennsylvania third-degree robbery sweeps more broadly than federal generic robbery because in each case the court focused its ruling on the fact that force was indeed used. In *Brown*, for example, the court held that the taking of the purse from the victim's arm by the defendant qualified as robbery because it was a "harmful touching of the person, accompanied with sufficient force to compel

- 13 -

the victim to part with the conscious control of her property." 484 A.2d at 742. In *McNair*, the government notes that the court upheld the conviction because the defendant used force against the victim, which can be actual or constructive, by "intimidat[ing] and instill[ing] in the victim a fear that she would be harmed," thereby compelling her to give up her bags. *McNair*, 546 A.2d at 690. Similarly, the government observes that the court in *Bloodsaw* upheld the defendant's conviction for third-degree robbery, reasoning that by grabbing the bag out of the victim's hand, the defendant used sufficient force, albeit slight, to be convicted of third-degree robbery. *Bloodsaw*, 2017 WL 3587143, at *2. Finally, in *Bedell*, the government states that the court upheld a defendant's third-degree robbery conviction for snatching a wallet from the victim's hand and fleeing, after which the victim chased the defendant, who threw the wallet at the victim. 954 A.2d at 1215. There, the court emphasized that the victim was fully aware of the taking of the wallet and that the wallet was taken with some force. *Id.*

The government additionally emphasizes that Pennsylvania case law is replete with examples of the appellate courts overturning third-degree robbery convictions where the property was not taken by force but by stealth. *See, e.g.*, *Commonwealth v. Williams*, 550 A.2d 579 (Pa.Super.1988)

(overturning a defendant's robbery conviction where the defendant rolled over an unconscious, intoxicated victim to remove his wallet, since the victim was not aware of the theft); *Commonwealth v. Windell*, 529 A.2d 1115 (Pa.Super. 1987) (reversing the defendant's robbery conviction because the defendant took a coin purse from the victim's person without the victim's knowledge); *Commonwealth v. Smith*, 481 A.2d 1352 (Pa.Super. 1984) (overturning a defendant's robbery conviction where he removed a pack of cigarettes from the pocket of a blind person, who was unaware of the theft, concluding that there was no force used). Therefore, given that Pennsylvania courts have consistently required *some* use of force for a third-degree robbery conviction, and because *Stokeling* holds that any use of force is sufficient for purposes of the identical elements clause of the ACCA, the government argues that Carey's robbery conviction qualifies under the elements clause of the Guidelines.

The court agrees with the government that, given the recent holding in *Stokeling*, Pennsylvania's third-degree robbery statute qualifies as a crime of violence under the elements clause of the Guidelines insofar as robbery by taking the property of another by force "however slight" is still sufficient force and does not sweep more broadly than the generic *de minimis* force. Like the

Florida robbery statute that *Stokeling* determined had an element of force, Pennsylvania's third-degree robbery requires force against a person which can be minimal, or however slight, so long as it is sufficient to overcome a victim's resistance. *See Brown*, 484 A.2d at 741 ("The degree of actual force is immaterial, so long as it is sufficient to separate the victim from his property in, on or about his body.").

In *Peppers*, the Third Circuit reversed its prior holding in *United States v. Cornish*, 103 F.3d 302, 309 (3d Cir.1997), that "any conviction for robbery under the Pennsylvania robbery statute, regardless of degree, has an element the use of force against the person of another." However, *Peppers* did so relying on the Supreme Court's discussion of "physical force" in *Johnson*—to wit, "'physical force' means violence force—that is, force capable of causing physical pain or injury to another person," *Johnson*, 559 U.S. at 140. More recently, however, in *Stokeling*, the Court clarified its holding in *Johnson*, stating that "*Johnson* did not purport to establish a force threshold so high as to exclude even robbery from ACCA's scope." *Stokeling*, 139 S.Ct. at 553. Emphasizing that *Johnson* was analyzing a misdemeanor battery statute, *Stokeling* instead clarified,

> The nominal contact that *Johnson* addressed involved physical force that is different in kind from the

violent force necessary to overcome resistance by a victim. The force necessary for misdemeanor battery does not require resistance or even physical aversion on the part of the victim; the "unwanted" nature of the physical contact itself suffices to render it unlawful.

By contrast, the force necessary to overcome a victim's physical resistance is inherently "violent" in the sense contemplated by *Johnson*, and "suggest[s] a degree of power that would not be satisfied by the merest touching." 559 U.S., at 139. This is true because robbery that must overpower a victim's will—even a feeble or weak-willed victim—necessarily involves a physical confrontation and struggle. The altercation need not cause pain or injury or even be prolonged; it is the physical contest between the criminal and the victim that is itself "capable of causing physical pain or injury." *Id.*, at 140. Indeed, *Johnson* itself relied on a definition of "physical force" that specifically encompassed robbery: "'[f]orce consisting in a physical act, *esp. a violent act directed against a robbery victim*.'" *Id.*, at 139, (quoting Black's Law Dictionary 717 (9th ed. 2009); emphasis added). *Robbery thus has always been within the "'category of violent, active crimes'" that Congress included in ACCA.*

*Stokeling*,139 S.Ct. at 553 (emphasis added). With respect to the definition of "force" or "violence"[5] in the elements clause of the ACCA, (which is identical to the elements clause of the Guidelines), the Court noted that they got their

---

[5] In a detailed analysis, the Court explained that "common-law authorities frequently used the terms 'violence' and 'force' interchangeably." *Stokeling*, 139 S.Ct. at 550.

meaning from traditional common law, whereby "[i]f an act physically overcame a victim's resistance, 'however slight' that resistance might be, it necessarily constituted [force or] violence." 139 S.Ct. at 550.

Here, given *Stokeling*'s holding that "the 'force' required for common-law robbery [is] sufficient to justify an enhanced sentence under the [ACCA]," logically, the force required for common-law robbery would also justify an enhanced sentence under the identical elements clause of the Guidelines. Thus, because Pennsylvania's third-degree robbery statute is plainly derived from the common-law definition of robbery as overcoming a victim's resistance "however slight," and because "[o]vercoming a victim's resistance [is] *per se violence* against the victim, even if it ultimately caused minimal pain or injury," the court finds that Carey's robbery conviction qualifies as a prior crime of violence under the elements clause Guidelines. *Id.* at 553.

The result is the same under the enumerated offense clause, which lists robbery as a crime of violence.[6] "When the Guidelines specifically list an offense, [the court must] compare the elements of the crime of conviction to the generic form of the offense as defined by the States, learned treatises,

---

[6] As the government observes, like the current Guidelines, the 2016 Guidelines in effect when Carey committed the robbery in 2017 listed robbery as an enumerated offense.

and the Model Penal Code." *McCants*, 952 F.3d at 428 (internal quotation marks omitted). The prior conviction qualifies as a crime of violence if "the statutory definition of the prior conviction substantially corresponds to the generic definition of the offense." *Id.*

The generic definition of robbery is "the taking of property from another person or from the immediate presence of another person by force or by intimidation," which "requires no more than *de minimis* force." *Id.* at 428-29 (internal quotation marks omitted); *see also United States v. Payo*, No. 2:17-cr-211-1, 2019 WL 235112, at *5 (W.D.Pa. Jan.16, 2019) ("The Court in *Graves* also held that 'generic federal robbery is defined as it is in the majority of state robbery statues, without the requirement of more than *de minimis* force." 877 F.3d at 504).

Carey argues that under the generic definition of robbery, a defendant must do more than snatch property from the person of another; he must direct a degree of force towards the victim beyond the minimum necessary to remove the item from the victim's grasp. Carey acknowledges that in *Graves*, the Third Circuit held that generic robbery requires no more than *de minimis* force to compel the victim to part with his property, but argues that this holding

was in error since every other Circuit to adopt a definition of generic robbery has found that it requires some level of force above *de minimis.*

The government, by contrast, argues that *Graves* is and remains the law of this Circuit, and notes that *Graves*'s holding was recently reaffirmed in *McCants.*[7] *See McCants*, 952 F.3d at 428-29 ("We held in *Graves* that 'generic robbery requires no more than *de minimis* force' to meet [the generic robbery] definition." (quoting *Graves*, 877 F.3d at 503)).

The court agrees with the government that Pennsylvania's third-degree robbery statute criminalizes substantially the same conduct as generic robbery and therefore is a qualifying offense under the enumerated clause. As the above discussion of Pennsylvania case law shows, third-degree robbery does indeed require force "however slight" that is sufficient to remove property from a conscious victim, which substantially aligns *Stokeling*'s definition of generic robbery with the Third Circuit's holding that generic

---

[7] Although *McCants* was decided after *Stokeling*, the *McCants* Court, which addressed whether a New Jersey robbery statute constituted a predicate crime of violence under elements and enumerated clauses of §4B1.2(a) of the Guidelines, did not address the Supreme Court's holding in *Stokeling*. Significantly, however, *McCants* did observe that New Jersey's robbery statute, by requiring the threat of bodily injury, involved more force than *de minimis* force and theoretically was narrower than the federal generic definition of robbery. 952 F.3d at 429.

robbery requires taking by no more than "*de minimis*" force. The court is unable to find any instance, either in practice or in theory, whereby a defendant's use of force "however slight" would not also constitute *de minimis* force.

Accordingly, in light of the finding that Carey's robbery conviction qualifies as a crime of violence under both the elements and enumerated clauses of §4B1.2(a) of the Guidelines, the court finds that Carey qualifies as a career offender and his criminal offense level is 32. The court agrees with the government that only a two-level deduction for acceptance of responsibility is appropriate in light of Carey's choice to plead guilty to Count 2 on the morning of trial. Therefore, Carey's offense level is appropriately calculated at 30, his criminal history category is VI, and his advisory guideline range is 168-210 months.

### III.    CONCLUSION

For the reasons set forth above, the government's objections to the final PSR are **SUSTAINED**, (Doc. 167), and the court finds that Carey qualifies as career offender under §4B1.1 of the Guidelines. Accordingly, Carey's total offense level is 30, his criminal history category is VI, and his advisory

guideline range is 168-210 months imprisonment. An appropriate order shall issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: April 30, 2020**
18-037-05