# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | **CRIMINAL NO. 3:18-CR-37** |
| **v.** | : | **(JUDGE MANNION)** |
| **JESSIE CAREY,** | : | |
| **Defendant** | : | |

## MEMORANDUM

Defendant Jessie Carey, who is imprisoned at the Federal Correctional Institution at McKean County, Pennsylvania, moves to vacate his sentence under 28 U.S.C. §2255. He asks to be resentenced without a "career offender" enhancement to his offense level, to a term of imprisonment of 30 to 37 months. He also asks for permission to appeal *nunc pro tunc*. After he filed his initial motion, (Doc. 220), he has been allowed to supplement it five times, (Docs 224, 227, 228, 230, 230-2). (Doc. 238). Also pending are his motion for emergency bail or home confinement, (Doc. 225), and his motion to appoint counsel, (Doc. 235). The government has filed a brief in opposition addressing all of these, (Doc. 242), and Defendant has filed a brief in response to the government's brief in opposition. (Doc. 249).

## I.   BACKGROUND[1]

In February 2018, a grand jury in this district issued a one-count indictment charging that Defendant did knowingly and intentionally possess with intent to distribute cocaine, in violation of 21 U.S.C. §841. (Doc. 1). Defendant plead not guilty to this indictment. (Doc. 15). Indicating that he intended to enter a plea of guilty, Defendant moved for the preparation of a pre-plea Presentence Investigation Report, (Doc. 32), which motion the court

---

[1] Defendant proceeds *pro se*. Over the course of this matter, he has been variously represented by three different attorneys and has represented himself. The Office of the Federal Public Defender for the Middle District of Pennsylvania was initially appointed to represent Defendant. (Doc. 14). The public defender, Leo Latella, moved to withdraw as attorney, citing irreconcilable difference and the request of Defendant; the motion was granted in September 2018. (Doc. 40, Doc. 43). Bernard J. Brown was then appointed to represent Defendant. (Doc. 44). In August 2019, the court granted the motion to withdraw of Mr. Brown, and reappointed the Federal Public Defender. (Doc. 80). On Defendant's request, he was later allowed to proceed *pro se* with the Federal Public Defender as "stand-by counsel." (Doc. 96). The court granted the public defender's motion to withdraw as standby counsel for Defendant in February 2020. (Doc. 162). Carl Poveromo was then appointed as stand-by counsel. (Doc. 173). Attorney Poveromo prepared Defendant's sentencing memorandum objecting to the Final Presentence Investigation Report, (Doc. 179), was thereafter appointed as Defendant's regular counsel at Defendant's request, (Doc. 199), and represented Defendant at sentencing and on appeal. (Doc. 209; Doc. 212).

granted. (Doc. 34). Defendant thereafter informed the court that he no longer wished to plead guilty. (Doc. 37).

The preliminary presentence investigation report concluded that Defendant was a career offender under §4B1.1 of the United States Sentencing Guidelines. (Doc. 56 at 5). The report indicated a total offense level of 29 and a criminal history category of VI, resulting in a guideline imprisonment range of 151 to 188 months. (Id. at 16). Defendant objected to the application of the career offender provision, arguing that one of his prior convictions in New Jersey did not include a drug distribution offense and therefore did not qualify as a predicate offense under that provision. (Doc. 57 at 3).

In May 2019, a grand jury issued a two-count superseding indictment, charging that Defendant did knowingly, intentionally, and unlawfully possess with intent to distribute cocaine and heroin in violation of 21 U.S.C. §841(a)(1). (Doc. 61).[2] Defendant plead guilty to Count I of the indictment on December 19, 2019. (Doc. 139). He plead guilty to Count II on January 6, 2020. (Doc. 145).

---

[2] The court granted the government's motion to amend the superseding indictment to delete a reference to possession of fentanyl. (Doc. 134).

A final PSR was prepared and concluded that Defendant was not a career offender, indicating a total offense level of 12 and a guideline imprisonment range of 30 to 37 months. (Doc. 176 at 7). The government objected to the PSR, arguing that the Defendant is a career offender pursuant to §4B1.1. (Doc. 167). The court sustained the government's objection and found that Defendant qualified as a career offender. (Doc. 184; Doc. 185). Defendant's total offense level was therefore adjusted to 30, and his guideline imprisonment range to 168 to 210 months. (Id.). On August 12, 2020, Defendant was sentenced to a total term of imprisonment of 144 months. (Doc. 210).

Defendant appealed his sentence, (Doc. 212), arguing that a prior conviction in Pennsylvania state court for third-degree robbery did not qualify as a "crime of violence" under USSG §4B1.2(a), and that he therefore did not qualify as a career offender. (Doc. 217-2) (COA No. 20-2723). In a non-precedential opinion, the Court of Appeals for the Third Circuit disagreed and affirmed Defendant's judgement of sentence. *United States v. Carey*, 2021 WL 2936741 (3d Cir. 2021).

Defendant now challenges his sentence again. He asserts that he was sentenced in violation of the Fourth, Fifth, Sixth, and Fourteenth

Amendments to the United States Constitution. (Docs. 220, 224, 227, 228, 230, 230-2).

## II.   LEGAL STANDARDS

### A. Motion to Vacate

Under 28 U.S.C. §2255, a prisoner in federal custody may move the sentencing court to "vacate, set aside or correct" his sentence on the ground that it "was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §2255(a).

### B. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees the accused in all criminal prosecutions "the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right to the assistance of counsel is "the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). A defendant may be deprived of this right where his counsel fails "to render adequate legal assistance." *Id.* The right exists not only during a jury trial which determines the defendant's guilt or innocence, but also "during sentencing in both noncapital and capital cases." *Lafler v. Cooper*, 566 U.S. 156, 165 (2012).

An ineffective assistance of counsel claim requires that a defendant show (1) "that his counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." *Williams v. Taylor*, 529 U.S. 362, 390 (2000) (quoting *Strickland*, 466 U.S. at 687). "To establish ineffectiveness, a defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 390–91. "To establish prejudice he must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 391. Where counsel's deficiency occurred at sentencing, even "a minimal amount of additional time in prison" which results because of that deficiency can constitute prejudice. *Glover v. U.S.*, 531 U.S. 198, 203 (2001) ("[O]ur jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance."); *see also United States v. Sepling*, 944 F.3d 138, 144 (3d Cir. 2019) (citing *Glover*, 531 U.S. at 203) ("It is now firmly established that a defendant's constitutional right to effective representation extends to sentencing hearings. The fact that counsel's dereliction may only have resulted in a comparatively 'small' increase in the amount of time a defendant is incarcerated neither negates nor lessens the Sixth Amendment's guarantee.").

## C. Career Offender Offense Level Enhancement

As discussed above, Defendant was ultimately determined to be a "career offender" under §4B.1.1 of the United States Sentencing Guidelines. Because of this designation, Defendant's offense level and guideline imprisonment range were higher than they would have been otherwise. Defendant challenged this designation before sentencing and on appeal, and challenges it again now.

Section §4B1.1 establishes offense levels for career offenders according to the statutory maximum sentence for the offense of conviction. §4B1.1(b). "A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." §4B1.1(a).

For the purpose of the career offender designation, a "crime of violence" is "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—(1) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (2) is murder, voluntary manslaughter, kidnapping,

aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. §5845(a) or explosive material as defined in 18 U.S.C. §841(c)." §4B1.2(a). A "controlled substance offense" is "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—(1) prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense; or (2) is an offense described in 46 U.S.C. §70503(a) or §70506(b). §4B1.2(b).

### III.   DISCUSSION – MOTION TO VACATE

#### A. Ground One: Ineffective Assistance of Counsel – Controlled Substance Offense

Defendant argues that his attorneys were ineffective in not advancing the argument that his prior New Jersey conviction for possession of cocaine was not a "controlled substance offense" for purposes of the United States Sentencing Guidelines' "career offender" designation. (Doc. 220 at 4, 15–21).

In 2007, Defendant was convicted in the Superior Court of Essex County, New Jersey for the manufacture, distribution, or possession with intent to manufacture or distribute cocaine. (Doc. 176 ¶35). Prior to sentencing, the parties did not disagree that this offense was a "controlled substance offense" under USSG §4B1.2(b). (Doc. 184 at 5). Defendant now says that his lawyers rejected his requests to argue that this offense was not a controlled substances offense.

The government asserts that this argument is foreclosed by *United States v. Folk*, 954 F.3d 597 (3d Cir. 2020), which held "that an incorrect career-offender enhancement under the advisory guidelines is not cognizable under §2255 because it is not a fundamental defect that inherently results in a complete miscarriage of justice." 954 F.3d 597, 604 (3d Cir. 2020). *Folk* addressed a direct challenge via §2255 to a sentencing court's career-offender designation, and reasoned that such a claim asserted neither a violation of the Constitution, nor any of the other grounds for §2255 relief. *Id.* at 601. Here, by contrast, Defendant *does* assert a constitutional violation: he alleges that his Sixth Amendment right was violated by his counsel's failure to advance certain arguments regarding his career-offender designation. Owing to this distinction, even after *Folk*, "[c]ourts in our circuit, including our court of appeals, continue to entertain ineffective-assistance

claims related to a defendant's career-offender status." *United States v. Robinson*, 2023 WL5352316, at *7 n.6 (M.D. Pa. 2023) (first citing *United States v. Dominguez-Rivera*, 810 F.App'x 110, 112–14 (3d Cir. 2020), and then citing *Herd v. United States*, 2022 WL1115280, at *3 n.3, 5–7 (D.N.J. 2022)).

So Defendant's argument must be considered on its merits. He contends that his New Jersey conviction is not a "controlled substances offense" because the New Jersey law under which he was convicted is broader than the Guidelines' definition of that term. (Doc. 220 at 15–16).

"Ordinarily, to determine whether a prior conviction qualifies as a crime of violence or controlled substances offense," courts employ what is called the "categorial approach." *United States v. Williams*, 898 F.3d 323, 333 (3d Cir. 2018). Under that approach, courts "consider only the elements of the crime of conviction and assess whether they fall within the bounds of a crime of violence or controlled substances offense, as defined under the Guidelines." *Id.*[3]

---

[3] There is also a "modified categorial approach" applied to statutes which are "divisible," meaning that "defined with alternative elements." *Williams*, 898 F.3d at 333. Under that approach, courts "may review a limited set of documents … to determine which version of the statute formed the basis of the prior conviction." *Id.* Defendant contends §2C-35-5 is not divisible, (Doc. 220 at 18). But as discussed *infra*, Defendant's argument
*(footnote continued on next page)*

In 2007,[4] Defendant was charged with and plead guilty to a violation of N.J. Stat. Ann. §2C:35-5, which provides that:

> [I]t shall be unlawful for any person knowingly or purposely:
> (1) To manufacture, distribute or dispense, or to possess or have under his control with intent to manufacture, distribute or dispense, a controlled dangerous substance or controlled substance analog; or
> (2) To create, distribute or possess or have under his control with intent to distribute, a counterfeit controlled dangerous substance.

N.J. Stat. Ann. §2C:35-5a. The categorical approach requires that the court consider the statute's elements and assess whether they fall within the bounds of a "controlled substances offense" as defined by USSG §4B1.1.

Defendant contends that they do not, because New Jersey law includes ioflupane under its definition of cocaine, while federal law excludes it. Indeed, in 2015, the Drug Enforcement Administration removed ioflupane from the schedules of the Controlled Substances Act. *See* Schedules of Controlled Substances: Removal of Ioflupane from Schedule II of the Controlled Substances Act. 80 Fed. Reg. 54715 (Sept. 11, 2015) (codified at 29 C.F.R. pt. 1308); 21 C.F.R. §1308.12(b)(4)(ii). New Jersey, by contrast, does not exclude ioflupane from its definition of cocaine. N.J. Stat. Ann.

---

does not prevail even under the categorical approach, so the court need not address the issue of divisibility.

[4] N.J. Super. Ct., Essex County, Case No. 07008416, Indictment No. 08-01-00021-I, Count 2. Defendant entered a plea of guilty to Count 2 on January 30, 2009.

§2C:35-5b(1); *Martinez v. Att'y Gen.*, 906 F.3d 281, 287 (3d Cir. 2018) ("To be sure, the New Jersey statute criminalizes *any* derivative of coca leaves. And federal law *currently* exempts ioflupane, a derivative of coca leaves, from the lists.") (internal citations omitted).

So the provision under which Defendant was convicted covers ioflupane, while Schedule II of the Controlled Substance Act now does not. But the federal definition does not limit the Sentencing Guidelines. That is, "a 'controlled substance' within the §4B1.2(b) definition of 'controlled substance offense' is one regulated by *either* federal or state law." *United States v. Lewis*, 58 F.4th 764, 769 (3d Cir. 2023). So it makes no difference that New Jersey controls more substances than federal law does. For according to *Lewis*, the Sentencing Guidelines' definition of a "controlled substance" *does* include ioflupane, as well as the other substances controlled by New Jersey law. As the elements of §2C:35-5 otherwise match §4B1.2(b), Defendant's New Jersey conviction qualifies as a "controlled substances offense" under the Sentencing Guidelines' career-offender provision.

More basically, Defendant's argument ignores a chronological problem. His New Jersey conviction occurred in 2007, but ioflupane was not removed from Schedule II until 2015. "[T]he categorical approach directs us

to compare the schedules at the time of conviction." *Martinez v. Attorney General*, 906 F.3d 281, 287 (3d Cir. 2018). So the date of Defendant's conviction also makes ioflupane's removal from Schedule II irrelevant.

In light of *Lewis* and *Martinez*, Defendant's substantive argument regarding the applicability of the "controlled substance offense" provision is plainly without merit. And though *Lewis* had not been decided at the time of Defendant's sentencing, *Martinez* had been. It thus cannot be said that counsel's representation fell below an objective standard of reasonableness by failing to raise this argument. Defendant's counsel reasonably opted to focus on other challenges to the career-offender designation. (Doc. 57; 179). For these reasons, the court rejects ground one of Defendant's motion.

## B. Ground Two: Ineffective Assistance of Counsel – Failure to Appeal

Defendant next argues that his appellate counsel Carl Poveromo was ineffective for failing to appeal the denial of Plaintiff's suppression motions. (Doc. 220 at 5). By entering a conditional plea agreement as to Count II of the superseding indictment, Defendant reserved his right to appeal the denial of his suppression motion. (Doc. 144).

Defendant filed three motions to suppress evidence, (Doc. 86; Doc. 108; Doc. 111), all of which the court denied. (Doc. 127; Doc. 143).

Defendant, represented by Mr. Poveromo, appealed the judgment of his sentence, (Doc. 212), arguing that the court erred in sustaining the government's objection to the presentence investigation report and in concluding that Defendant's prior conviction for Pennsylvania third-degree robbery constitutes a crime of violence for purposes of the Guidelines' career-offender designation. Brief for Appellant at 7, 15, United States v. Carey, 2021 WL2936741 (3d Cir. 2021) (No. 20-2723, Doc. 21-1), 2020 WL671045, at \*\*2, 10. Defendant did not appeal the denial of his motions for suppression. He now says that he asked his appellate counsel, Mr. Poveromo, to do so, but that Mr. Poveromo did not. (Doc. 220 at 5).

The Sixth Amendment right to effective assistance of counsel, and thus *Strickland*'s test, applies to claims that a defendant's counsel was constitutionally ineffective for failing to file a notice of appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). Therefore, such a defendant "must show first that counsel's representation was objectively unreasonable, and second, that counsel's deficient performance was prejudicial." *Solis v. United States*, 252 F.3d 289, 293 (3d Cir. 2001). This test's application to circumstances like those alleged here has been explained as follows.

> With regard to objectively reasonable representation, counsel has 'a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example,

because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.' *Flores-Ortega*, 528 U.S. at 480. In cases where the defendant pleaded guilty, 'the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights.' *Id.* Regarding prejudice, the Supreme Court held that 'when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal.' [*Id.*] at 484. Prejudice is presumed from counsel's failure to file a notice of appeal when so requested by a client.

*Solis*, 252 F.3d at 293–94.

Where a defendant "claims that he directed his attorney to file an appeal, but that his attorney failed to comply," a question of fact is created as to whether the defendant directed his attorney to file an appeal. *Id.* at 294. In the context of a §2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall … grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law thereron." 28 U.S.C. §2255(b).

Thus, the Third Circuit has instructed that:

[W]hen a defendant is convicted of a crime and alleges that his lawyer failed to appeal the conviction, and there is a potential factual dispute on this issue, the defendant is entitled to a hearing before the District Court to prove that he made the request and that his lawyer failed to honor it. However, a defendant would not be entitled to a hearing if his allegations were contradicted conclusively by the record, or if the allegations were patently

frivolous. If … the [d]istrict [c]ourt determines that [the defendant's] counsel was ineffective, then [the defendant] must be given the opportunity *nunc pro tunc* to brief his direct appeal in full.

*Solis*, 252 F.3d at 295 (internal citations omitted).

Here, Defendant alleges that he directed his attorney Mr. Poveromo to file a direct appeal of the denial of his suppression motions, but that Mr. Poveromo did not file such an appeal. A factual dispute thus exists as to whether Defendant so requested Mr. Poveromo. The court will grant a hearing for the sole purpose of determining whether Defendant requested or reasonably demonstrated to Mr. Poveromo that he desired to appeal the denial of his motions to suppress. The court will also appoint counsel for the sole purpose of representing Defendant at this hearing. If the court concludes that Defendant has been denied the effective assistance of counsel on this ground, Defendant will be given the opportunity *nunc pro tunc* to pursue direct appeal of the denial of his motions to suppress.

### C. Ground Three: Due Process / Double Jeopardy / Ineffective Assistance of Counsel

Under this ground, Defendant challenges the amendment of the superseding indictment. (Doc. 133; Doc. 134). He contends that this

amendment amounted to a violation of the Fifth Amendment's Due Process and Double Jeopardy clauses. (Doc. 220 at 7).

### 1. Due Process

Count 1 of the superseding indictment charged Defendant with possession with intent to distribute cocaine, fentanyl, and heroin. (Doc. 61). Because trial preparation revealed that only cocaine and heroin were seized from Defendant (fentanyl was seized from a co-occupant of Defendant's residence), the government moved to amend Count 1 "to strike the surplusage and eliminate any reference to the controlled substance *fentanyl* from the superseding indictment." (Doc. 133). The court granted the government's motion and amended the indictment accordingly. (Doc. 134).

Defendant contends that the government's amendment was "in violation of [his] constitutional rights," (Doc. 220 at 7), under the Fifth Amendment's Grand Jury Clause. (Id. at 36, 38). "The Fifth Amendment requires that a defendant be tried only for crimes for which he has been indicted." *United States v. Scarfo*, 41 F.4th 136, 193 (3d Cir. 2022). "Accordingly, a court cannot later amend an indictment—either formally or constructively—to include new charges." *Id.* "A constructive amendment occurs when the court broadens the possible bases for conviction from those which appeared in the indictment." *Id.* Such an amendment violates the

grand jury clause "because it deprives the defendant of his right to be indicted by a grand jury." *United States v. Savage*, 85 F.4th 102, 134–35 (3d Cir. 2023). Here, the court on motion of the government, amended the indictment to *remove* any reference to fentanyl. The possible bases for conviction were thereby narrowed, not broadened. So the indictment was not amended in violation of the grand jury clause.[5] *See United States v. Miller*, 471 U.S. 130, 136 (1985) ("As long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment, the right to a grand jury is normally violated by the fact that the indictment alleges more crimes or other means of committing the same crime.").

To the extent Defendant challenges the amendment because it somehow "denied" him of a "material defense [and] exculpatory evidence that would have won [him] an acquittal at trial," (Doc. 220 at 7, 49), the court

---

[5] Defendant further asserts that the court erred by striking reference to fentanyl from the superseding indictment, (Doc. 220 at 38), because Rule 7(d) of the Federal Rules of Criminal Procedure provides that "[u]pon the defendant's motion, the court may strike surplusage from the indictment." *See also* Fed. R. Civ. P. 7 advisory committee note to subdivision (d) ("The authority of the court to strike such surplusage is to be limited to doing so on defendant's motion."). This argument is of no moment because there is no indication whatsoever that Defendant was prejudiced by the striking of reference to fentanyl. Defendant knowingly and voluntarily plead guilty to the charges of the amended indictment. (Id. 149 at 33–51).

disagrees, for the fact that he did not possess fentanyl is irrelevant to the determination whether he possessed cocaine and heroin; in any event, he knowingly and voluntarily plead guilty to possession of cocaine and heroin. And to the extent Defendant claims that he was "deprived of notice" of the amendment, that claim is contradicted by the record: at Defendant's final pretrial conference on December 19, 2019, the government moved on the record to amend the indictment, the court amended it, and Defendant acknowledged the amendment. (Doc. 149 at 19:9–20:21). He then plead guilty to Count 1 of the superseding indictment as amended. (Id. 149 at 33–51).

Defendant further suggests that the amendment was unconstitutional because it amounted to an amendment of the "identity the accused." (Doc. 220 at 39-40).[6] The amendment here did no such thing. It simply removed

---

[6] For this argument Defendant relies on *United States v. Alcorta*, 145 F. Supp. 3d 357, 362 (M.D. Pa. 2015). "The suggestion that a court may amend an indictment to identify the accused solely on the basis of extrinsic evidence—unknown to the grand jury and not in existence at the time it convened—finds no support in the law. Such a rule would render the guarantee of indictment by a grand jury a legal nullity." *Id.* The indictment at issue in *Alcorta* initially named as defendant one "Bibi LNU." *Id.* at 358. Further post-indictment investigation alerted prosecutors that "Bibi" may have referred to the defendant, and so they moved to amend the indictment to identify the defendant by name instead of as "Bibi LNU." *Id.* at 359. The court concluded that such an amendment violated the Fifth Amendment. *Id.* at 362–63. Unlike the indictment in *Alcorta*, the indictment here was not

*(footnote continued on next page)*

the superfluous reference to fentanyl; the identity of the accused remained the same.

## 2. Double Jeopardy

As to Defendant's Double Jeopardy argument: Defendant already raised this argument on February 7, 2020, when he moved to dismiss Count 2 of the superseding indictment. (Doc. 160). He argued that the Double Jeopardy clause barred prosecution of Count 2—which, like Count 1, charged him with possession with intent to distribute cocaine and heroin— because he had already plead guilty to Count 1. (Id.). The court denied Defendant's motion, explaining that the two Counts stemmed "from two entirely separate criminal incidents, one of which occurred on January 12, 2017, and the other on August 5, 2017," as indicated by the indictment. (Doc. 174). "In order for multiple punishments to constitute a double jeopardy violation, the multiple charged offenses must be the same in law *and* in fact." *United States v. Finley*, 726 F.3d 483, 495 (3d Cir. 2013). Therefore, "[t]he Double Jeopardy Clause is not implicated when multiple separate violations of the same provision are charged in multiple counts." *Id.* Here, although

---

amended to modify the identify of the accused. The superseding indictment, originally and after amendment, named Jesse Carey as the Defendant. (Doc. 61).

Counts I and II charged violations of the same law, those violations were separate in fact. So no violation of the Double Jeopardy clause has occurred.

### 3. Ineffective Assistance of Counsel

Defendant finally contends that his counsel were ineffective for failing to object to the indictment. (Doc. 220 at 43, 46). Before trial, a criminal defendant may move for the dismissal of an indictment based on a defect in the indictment. *United States v. Dominguez*, 604 F. Supp. 3d 260, 263 (M.D. Pa. 2022) (citing Fed. R. Crim. P. 12(b)(3)). Defects include "(i) joining two or more offenses in the same count (duplicity); (ii) charging the same offense in more than one count (multiplicity); (iii) lack of specificity; (iv) improper joinder; and (v) failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B). "[S]uch dismissals may not be predicated upon the insufficiency of evidence to prove the indictment's charges." *United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000). There is no indication here that the indictment was defective,[7] only that evidence of fentanyl possession was later determined

---

[7] Defendant suggests that the indictment was defective for failing to contain the essential elements of the crime charged. *See United States v. Schramm*, 75 F.3d 156, 163 (3d Cir. 1996). (Doc. 220 at 44). But the indictment set forth precisely the elements of the crime charged, 21 U.S.C. §841(a)(1). It charged that Defendant "did knowingly, intentionally, an unlawfully possess with intent to distribute cocaine and fentanyl, Schedule II controlled substances, and heroin, a Schedule I controlled substance." (Doc. 61). *See* 21 U.S.C. §841(a)(1) ("[I]t shall be unlawful for any person

*(footnote continued on next page)*

to be absent. Therefore, defense counsel were not unreasonable for failing to object to the indictment, and Defendant was not thereby deprived of effective assistance of counsel.

### D. Ground Four: Unconstitutional Seizure / Ineffective Assistance of Counsel / Due Process

#### 1. Mt. Airy Casino Arrest

Defendant asserts that his arrest at Mt. Airy casino was unlawful and that his counsel should have moved to suppress the evidence obtained as a result of that arrest. (Doc. 220 at 8, 56–58). On September 27, 2019, Defendant, through his then-counsel Mr. Latella, moved to suppress the evidence obtained a result of his seizure at Mt. Airy casino. (Doc. 86 ¶¶11–12). Defendant requested that this motion be withdrawn, (Doc. 98), which request the court granted. (Doc. 99). Defendant then, proceeding *pro se*, filed a motion to suppress, arguing in part that he had been unlawfully seized. (Doc. 108). The court denied this motion. (Doc. 126; Doc. 127).

First, Defendant may not attempt to appeal the denial of his motion to suppress through the vehicle of §2255. *United States v. Frady*, 456 U.S. 152,

---

knowingly or intentionally to … possess with intent to manufacture, distribute, or dispense, a controlled substance."). Defendant also suggests that the indictment was actually an attempt to charge him with conspiracy to distribute a controlled substance. (Doc. 220 at 44, 46). But the indictment did not charge Defendant with conspiracy.

165 (1982) ("[A] collateral challenge may not do service for an appeal.").[8]

Second, to the extent Defendant contends that his counsel was ineffective for not pursuing the specific argument set forth in his instant motion, the court disagrees.

Defendant argues that the Pennsylvania State Police exceeded their authority under Pennsylvania law when they arrested him at Mt. Airy casino on August 5, 2017. (Doc. 220 at 56–57). According to the Pennsylvania Rules of Criminal Procedure, police may make an arrest without a warrant "(a) when the offense is a murder, felony, or misdemeanor committed in the presence of the police officer making the arrest; or (b) upon probable cause when the offense is a felony or murder." Pa. R. Crim. P. 502(2). Defendant asserts that he was arrested without a warrant for a misdemeanor which was not committed in the presence of the arresting officers. (Doc. 220 at 56–57).

Defendant was initially seized by casino security after producing a fake identification card. While he was being escorted to the security office, he pushed one of the security officers and tried to flee. In the process, a black

---

[8] It appears that Defendant tries to circumvent this rule by claiming that this argument is "newly discovered." (Doc. 220 at 56). Although in certain circumstances "newly discovered evidence" may provide a basis for relief, *see, e.g.*, *United States v. Ianelli*, 528 F.2d 1290 (3d Cir. 1972), the fact that his argument is newly discovered to him does not excuse Defendant's failure to raise it on appeal.

sock containing baggies of cocaine and heroin fell out of his pocket and was seized by security. (Doc. 176 ¶13).

In these circumstances, the officers had probable cause that Defendant had committed a felony. Possession with intent to deliver a controlled substance is a felony. 35 Pa. Cons. Stat. §780-113(a)(30), (f)(1). Based on the facts that Defendant had attempted to enter the casino with cocaine and heroin and had then tried to flee security by force, the arresting officers had probable cause to believe that he possessed with intent to deliver controlled substances.

Because Defendant's Fourth Amendment argument is without merit, Defendant's counsel did not act unreasonably in failing to raise it. Defendant was therefore not deprived of the effective assistance of counsel on this ground.

### 2. Probable Cause Hearing / Arraignment

Defendant also appears to challenge his detention by state officials following his arrest. (Doc. 220 at 62–64). According to Defendant, he was "never taken before a magistrate or even served a complaint in five years from the date of the arrest on count one of the superseding indictment." (Id.

at 62).[9] He asserts that his Fourth Amendment and Fourteenth Amendment procedural due process rights were thereby violated. (Id. at 63).

Defendant does not explain how any procedural errors at the state level rendered the sentence imposed by this court unconstitutional. Upon indictment in federal court, an arrest warrant was promptly issued and Defendant was arraigned. (Doc. 4; Doc. 12; Doc. 15; Doc. 66). He also states that the "federal government never had the jurisdiction to bring the superseding indictment." (Doc. 220 at 63). The court rejects this argument; Defendant has not established a jurisdictional defect. The United States Attorney had the authority to bring the indictment returned by the grand jury charging Defendant with an offense against the United States.

### 3. Denial of right of self-representation (Doc. 220 at 23–28)

Defendant further asserts that his plea of guilty was involuntary because he was under the impression that he, rather than his stand-by counsel, would be able to make arguments before sentencing regarding the career-offender designation. (Doc. 220 at 37). Carl Poveromo was appointed as standby counsel for Defendant prior to sentencing. (Doc. 173). He filed a

---

[9] Contrary to Defendant's assertion, his criminal docket at the Luzerne County Court of Common Pleas indicates that a magisterial district judge set bail on August 7, 2017, and that Defendant appeared and waived arraignment on September 13, 2017. Ct. Common Pleas, Luzerne Cnty. Docket No. CP-40-CR-0003083-2017.

sentencing memorandum on Defendant's behalf, arguing that Defendant was not a career offender because his prior conviction for Pennsylvania third-degree robbery was not a "crime of violence" under the Guidelines. (Doc. 179).

Consistent with a criminal defendant's constitutional right to conduct his own defense, recognized in *Faretta v. California*, 422 U.S. 806 (1975), "a trial court may appoint 'standby counsel' to assist the *pro se* defendant in his defense." *McKaskle v. Wiggins*, 465 U.S. 168, 170 (1984). "In determining whether a defendant's *Faretta* rights have been respected" in the context of involvement by standby counsel, "the primary focus must be on whether the defendant had a fair chance to present his case in his own way." *Id.* at 177. The Sixth Amendment imposes "no absolute bar on standby counsel's unsolicited participation." *Id.*

Here, there is no indication that Defendant was deprived of a fair chance to present his arguments regarding the career-offender designation in his own way. At the time the final presentence investigation report was filed and before the court ruled on the government's objection to it, Defendant was still proceeding *pro se* and was therefore entitled to object to the PSR as he saw fit. Therefore, the court rejects Defendant's argument that his guilty plea was involuntary.

**E. Ground Five: Career Offender Status (Supplement #1)**

Defendant's next claim is that his prior conviction for third-degree robbery in Pennsylvania is no longer a career-offender predicate under the Sentencing Guidelines. (Doc. 224).

First, "an incorrect career-offender enhancement under the advisory Guidelines does not present a cognizable claim under 28 U.S.C. §2255." *United States v. Folk*, 954 F.3d 597, 610 (3d Cir. 2020). Though Defendant also argues this ground by means of an ineffective assistance of counsel claim, his argument is without merit.

In 2017, Defendant was convicted in Luzerne County Court of Common Pleas for a violation of 18 Pa. Cons. Stat. §3701(a)(1)(v), which is a felony of the third degree. (Doc. 176 ¶40) (Docket No. CP-40-CR-0004206-2015). Section 3701(a)(1) provides that "[a] person is guilty of robbery if, in the course of committing a theft, he: … (v) physically takes or removes property from the person of another by force however slight."

Defendant relies on *Borden v. United States*, 141 S.Ct. 1817, 1834 (June 10, 2021), which held that "[o]ffenses with a *mens rea* of recklessness do not qualify as violent felonies under" under the elements clause of 18 U.S.C. §924(e) of the Armed Career Criminal Act. The ACCA mandates a minimum term of imprisonment of 15 years for those who violate 18 U.S.C.

§922(g) (unlawful possession of a firearm) and have three previous convictions for a "violent felony or a serious drug offense." §924(e)(1). For ACCA purposes, a "violent felony" includes "any crime punishable by imprisonment for a term exceeding one year … that—(i) has as an element the use, attempted use, or threatened physical use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." §924(e)(2)(B).

Unlike the definition of "violent felony" under the ACCA, the definition of "crime of violence" under the Sentencing Guidelines' career-offender provision includes robbery among its enumerated offenses. USSG §4B1.2(a)(2) ("The term 'crime of violence' means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that … is … robbery."). On Defendant's appeal of his sentence, which was decided after *Borden*, the Court of Appeals concluded that Defendant's Pennsylvania robbery conviction "constitutes a crime of violence under the enumerated-offense clause of the Sentencing Guidelines" because 18 Pa. Cons. Stat. §3701(a)(1)(v) substantially corresponds to the federal generic definition of robbery. *United States v. Carey*, 2021 WL 2936741, at *2 (3d Cir. July 12, 2021). So *Borden*, which dealt with the elements clause of 18

U.S.C. §924(e), did not alter the treatment of Defendant's robbery conviction, which constitutes a crime of violence under USSG §4B1.2(a)'s enumerated-offense clause.

Because this argument is without merit, Defendant's counsel were not ineffective in failing to advance it. He was therefore not deprived of effective assistance of counsel on this ground.

### F. Ground Six: Due Process – Fair Notice (Supplement #2)

In this ground, Defendant contends that his Fifth Amendment Due Process rights were violated by his designation as a career offender under the Sentencing Guidelines.[10] (Doc. 227). He argues that the Controlled Substances Act schedules in effect at the time of his offense should have governed the application the career-offender enhancement, and that because New Jersey controlled ioflupane and the federal CSA did not, his New Jersey conviction for possession with intent to distribute cocaine is not a "controlled substances offense" under the career-offender provision. *See* USSG §4B1.2(b).

---

[10] Defendant also cites his Fifth Amendment right to "Fair Notice," presumably referring to the Due Process Clause's prohibition on "taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Beckles v. United States*, 580 U.S. 256, 262 (2017).

This is essentially the same argument that Defendant advances in Ground One. First, he is mistaken as to the schedules in effect at the time of his offense. As discussed *supra* Section III.A., Defendant's New Jersey conviction occurred in 2007, but ioflupane was not removed from Schedule II until 2015. *See Martinez* 906 F.3d at 287 ("[T]he categorical approach directs us to compare the schedules at the time of conviction."). Second, as also discussed *supra* Section III.A, because "a 'controlled substance' within the §4B1.2(b) definition of 'controlled substance offense' is one regulated by *either* federal or state law," *Lewis*, 58 F.4th at 769, the New Jersey offense for which he was convicted qualifies as a "controlled substances offense" under the Sentencing Guidelines' career-offender provision. Defendant was therefore not deprived of due process or fair notice on this ground.

### G. Ground Seven: Due Process – Inaccurate Information (Supplement #3)

This claim is also a challenge to the application of the career-offender provision to Defendant's 2007 New Jersey conviction. (Doc. 228). Defendant alleges that "the Government … used inaccurate information in the Addendum to the PSR when [it] lied to the court about [Defendant's] prior NJ drug charge" and that "[t]he Government knew the CSA schedules were

amended and [that Defendant's] prior NJ drug charge was not a career offender predicate." (Id. at 2).

Again, as discussed *supra* Sections III.A & G, ioflupane was not removed from Schedule II until 2015, well after Defendant's 2007 New Jersey conviction, and at any rate, that conviction properly qualifies as a career offender predicate. The Government therefore did not use inaccurate information.

### H. Ground Eight: Due Process – Imprisonment in violation of Constitution (Supplement #4)

Defendant's next supplementary filing generally alleges "multiple due process and constitutional violations." (Doc. 230). It also references lockdowns at the prison and Defendant's ongoing child custody hearings in family court. This filing does not set out a ground for §2255 relief.

### F. Ground Nine – Ineffective Assistance of Counsel (Supplement #5)

In Defendant's final supplementary filing, he again claims that he was deprived of effective assistance of counsel because his attorney failed to appeal the denial of Defendant's motions to suppress. (Doc. 230-2). This is the same argument Defendant advances in Ground Two, and has been addressed *supra* Section III.B. Defendant also generally alleges that his

other attorneys were ineffective, and that he is "currently being wrongfully detained in violation of the … Fourth, Fifth, and Sixth Amendments." These conclusory allegations do not state a claim for §2255 relief.

## IV.   DISCUSSION – MOTION FOR EMERGENCY BAIL OR HOME CONFINEMENT

Defendant requests emergency bail or home confinement because "at the time of the PSR and sentencing both prior convictions were overbroad and indivisible and [Defendant] was denied due process and [subjected to] a fundamentally unfair sentencing hearing and ineffective assistance of counsel." (Doc. 225).

The court has addressed Defendant's arguments regarding his career offender designation, (*see supra* Section III.A), due process, (*see supra* Sections III.C.1 & III.D.3), and ineffective assistance of counsel (*see supra* Sections III.A, III.B, III.C.3, III.D.1, & III.F). The court concludes that Defendant has not shown that he is imprisoned in violation of the Constitution or the laws of the United States, and his motion for emergency bail or home confinement will therefore be denied.

## V.    DISCUSSION – MOTION FOR APPOINTMENT OF COUNSEL

Defendant moves for the appointment of the Federal Public Defender's Office in Scranton to assist with his motion to vacate. (Doc. 235). He repeats his argument that his 2007 New Jersey conviction is not a predicate crime of violence under the Sentencing Guidelines, which argument has been addressed *supra* Section III.A, and requests the assistance of counsel to develop this argument. The court will not appoint counsel for the purpose of developing Defendant's argument that his 2007 New Jersey conviction is not a crime of violence under the Sentencing Guidelines, because that argument is plainly without merit. *See supra* Section III.A. Therefore, this motion will be denied. But as explained *supra* Section III.B, the court will appoint counsel to represent Defendant at an evidentiary hearing, the sole purpose for which will be to determine whether Defendant requested or reasonably demonstrated to his attorney Carl Poveromo that he desired to appeal the denial of his motions to suppress.

## VI.    CONCLUSION

For the foregoing reasons, the court will deny Defendant's motion to vacate, set aside, or correct his sentence, (Doc. 220), except with regard to Ground Two, (Doc. 220 at 5), under which Defendant alleges that his

- 33 -

attorney failed to appeal the denial of Defendant's motions to suppress evidence despite Defendant's request that he do so. With regard to Ground Two, the court will schedule an evidentiary hearing, the sole purpose of which will be to determine whether Defendant requested or reasonably demonstrated to counsel that he desired to appeal those motions. For this sole purpose of representing Defendant at this hearing, the court will appoint counsel. Defendant's motion for emergency bail or home confinement, (Doc. 225), will be denied. Defendant's motion to appoint counsel to develop the argument related to his New Jersey controlled substance conviction and his career-offender designation, (Doc. 235), will be denied.

An appropriate order will follow.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: December 15, 2023**
18-37-06

- 34 -